UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CFSP 2024-AHP1 81-83 SEAMAN AVENUE LLC,

                Plaintiff,

v.

81 SEAMAN REALTY LLC, JOEL WIENER, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100,

                Defendants.

No. 25-cv-4113 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

       Plaintiff CFSP 2024-AHP1 81-83 Seaman Avenue LLC ("CFSP") brings this mortgage foreclosure action against 81 Seaman Realty LLC ("Seaman Realty"), Joel Wiener, the New York City Environmental Control Board and several John Does, seeking to foreclose on a residential apartment building in New York City (the "Property"). On July 9, 2025, CFSP filed a motion to appoint a receiver over the Property, Dkt. No. 16, which Seaman Realty, the borrower, opposed, Dkt. No. 24. The Court heard oral argument on August 14, 2025. For the reasons that follow, CFSP's motion for appointment of a receiver is granted.

## LEGAL STANDARD

       Federal Rule of Civil Procedure 66 empowers district courts to appoint a receiver in order to protect a party's interest, including in mortgage foreclosure actions. *See* Fed. R. Civ. P. 66 (explicitly authorizing appointment of receivers); *Kairos Credit Strategies Operating P'ship, LP v. Friars N.A., Inc.*, No. 23-cv-2960 (JPO), 2023 WL 3675921, at *2 (S.D.N.Y. May 26, 2023)

("[A] federal court has the equitable power to appoint a receiver in order to protect a party's interest."). "It is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1998).

## DISCUSSION

The Court assumes the parties' familiarity with the relevant facts and procedural history, and includes only the information necessary to rule on the motion before it.

### I.     Diversity Jurisdiction

In advance of oral argument, the Court ordered the parties to submit letters addressing whether it had diversity jurisdiction over this matter. *See* Dkt. No. 29. Diversity jurisdiction requires complete diversity between opposing parties, *see* 28 U.S.C. § 1332, and the plaintiff has the burden of showing that this requirement is met, *see Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1421 (2d Cir. 1997). Individuals are citizens of the state where they are domiciled, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989), while corporations are citizens of their state of incorporation as well as the state in which their principal place of business is located, 28 U.S.C. § 1332(c). Unincorporated associations such as LLCs and partnerships, meanwhile, take the citizenship of each of each of their members. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

Here, there is no dispute that Defendants are citizens of New York and the British Virgin Islands. *See* Dkt. No. 1 ¶¶ 7–10. The citizenship of Plaintiff CFSP is more complicated, however, since it is an LLC whose sole member is a Trustee—Computershare Trust Company N.A.—acting

2

on behalf of certificateholders of a commercial mortgage-backed security ("CMBS") trust named the Series 2024-AHP1 Mortgage Trust (the "Trust"). *Id.* ¶ 5.

Because CFSP is an LLC, the Court must examine the Trust to determine its citizenship. In *Americold Realty Trust v. Conagra Foods, Inc.*, the Supreme Court clarified that there are two different citizenship rules for trusts, depending on whether it is a "traditional," common-law trust or rather an "unincorporated business trust" that functions more like a "joint-stock company." 577 U.S. 378, 383 (2016). When a trust is of the traditional variety, its citizenship is determined by that of its trustee. *Id.*; *see also Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017). But when a trust is instead a "business trust," it takes the citizenship of each of its beneficiaries, much like an unincorporated entity. *Americold*, 577 U.S. at 383.

Applying that framework, the Court finds that the Trust is a traditional trust, which means that it takes the citizenship of its Trustee, Massachusetts. As the record here shows, the Trust is a commercial mortgage-backed security trust organized under New York law. *See* Dkt. No. 31 Ex. 1 ("PSA") § 12.3 (specifying that Trust is organized under New York Law); *Anh Nguyet Tran v. Bank of N.Y.*, No. 13-cv-580 (RPP), 2014 WL 1225575, at *1 n.4 (S.D.N.Y. Mar. 24, 2014) ("[U]nder New York law, a trust is not a person that can sue or be sued."). And as multiple judges in this district have found, such CMBS trusts are traditional trusts that take the citizenship of their trustees. *See Wilmington Tr., Nat'l Ass'n v. Kunba, LLC,* No. 25-cv-1696 (DLC), 2025 WL 1898968, at *1 (S.D.N.Y. July 9, 2025) (finding another CMBS trust to be a "traditional trust" because it was "a common law trust organized under New York law" that did not provide voting or control rights to certificateholders); *Wilmington Tr., Nat'l Ass'n v. Aevri Salina Meadows LLC*, No. 23-cv-8824 (JPC), 2025 WL 405721, at *5 (S.D.N.Y. Feb. 5, 2025) (same). That is because these trusts operate much like common-law trusts, in that they cannot sue or be sued in their own

3

names, and are instead managed by a trustee. *See Natixis Real Est. Cap. Tr. 2007 HE-2 v. Natixis Real Est. Holdings, LLC*, 50 N.Y.S. 3d 13, 17 (1st Dep't 2017) ("[A]n RMBS trust is not unlike a typical common-law trust in which the trustee (rather than the trust itself, which is a legal fiction) holds the asset for the benefit of the certificate holders (who are the beneficiaries of the trust).").

At argument, Seaman Realty argued that the Trust is a non-traditional business trust, because it has a "directing certificateholder" that exercises some degree of control over certain trust affairs. *See* PSA § 3.10(h). But as the Court pointed out in the order it issued after argument, Dkt. No. 34, multiple judges in this district have rejected that very argument for CMBS trusts that similarly had a directing or majority certificateholder. *See Wilmington Tr., Nat'l Ass'n v. 115 Owner LLC*, No. 20-cv-2157 (JMF), 2021 WL 5086368, at *2 (S.D.N.Y. Nov. 2, 2021); *Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs., LLC*, No. 16-cv-9112 (LGS), 2017 WL 2684069, at *3 (S.D.N.Y. June 21, 2017); *Wilmington Tr.*, 2025 WL 405721, at *5–6 . As those decisions explained, these trusts are still traditional trusts even if they have a directing certificateholder who possesses some control over certain trust decisions like foreclosures. *See Wells Fargo Bank*, 2017 WL 2684069, at *3; *Wilmington Tr.*, 2021 WL 5087368, at *2. That is because, no matter what rights this certificateholder has, the trustee remains the one who can bring suit on behalf of the trust, and who has ultimate power to manage its affairs. *See Wilmington Tr.*, 2021 WL 5086368, at *2 ("The Directing Certificateholder cannot participate in the management of the Trust, *see* PSA § 13.03(b), and, unlike Wilmington, would have no authority to sue on behalf of the Trust in its own name."). Both of those features are present here, as only the Trustee can bring suit on behalf of the Trust under New York law, *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 97–98 (2d Cir. 2021), and the PSA explicitly bars certificateholders from controlling "management of the Trust Fund" itself, PSA § 12.7. While the directing certificateholder has some

4

unique powers over trust decisions like foreclosures here, the Trust therefore remains a traditional trust under the *Americold* standard.

Because the Trust is a traditional trust, its citizenship—as well as the citizenship of CFSP, the LLC of which the Trustee is the sole member—is determined by that of the Trustee. Here, Computershare Trust Company N.A., is a national banking association, which by statute takes the citizenship of the state where its main office is located, Massachusetts. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006) (holding that national bank's citizenship is that of its main office under 28 U.S.C. § 1348). And because none of the known Defendants shares that citizenship, there appears to be complete diversity at this stage.[1] Accordingly, the Court is satisfied that it has diversity jurisdiction over this action.

## II. Standing

The Court also concludes that CFSP has standing to bring this action. Seaman Realty argues that standing is lacking, because there is a defect in the "Third Allonge" that purportedly transferred the mortgage note to CFSP. *See* Dkt. No. 24 ("Seaman Opp'n") at 4 (arguing that CFSP must show that the Allonge was "firmly affixed" to the Note when it was signed). This defect, Seaman Realty says, deprives CFSP of standing since it is unclear whether it is the true holder of the note on which it seeks to foreclose.

This argument fails. As the Second Circuit has explained, "a plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was *either* the holder or assignee of the underlying note." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (emphasis added) (applying New York law). Thus, even if there are

---

[1] Although this could change once the John Doe defendants are identified, courts in this district have found it appropriate to exercise diversity jurisdiction over cases involving anonymous defendants unless and until "an unknown defendant is later found to share plaintiff's domicile." *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 448 (S.D.N.Y. 2014).

supposed defects with the transfer of a note, the plaintiff may simply show that it was validly assigned the note, such as by "prov[ing] that it obtained the note and endorsements by physical delivery before commencing th[e] foreclosure action." *Courchevel 1850 LLC v. Koznitz I LLC*, No. 23-7263, 2025 WL 1512953, at *3 (2d Cir. May 28, 2025); *see also U.S. Bank N.A. v. Collymore*, 890 N.Y.S. 2d 578, 580 (2d Dep't 2009) (a plaintiff has standing where it is "both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced").

Here, even if Seaman Realty is correct about the timing of the affixation to the Third Allonge, CFSP has shown standing by way of its status as an assignee. As in *Courchevel*, CFSP has shown that it had physical possession of the Note before commencing this action, and that there is an unbroken chain of transfer to it. *See Courchevel*, 2025 WL 1512953, at *3. No matter whether CFSP is the holder of the Note, it possesses an interest in it through a valid assignment, and thus has standing to bring this action and seek appointment of a receiver.

### III.   Appointment of Receiver

Finally, the Court concludes that CFSP has met the standard for appointment of a receiver. When deciding whether to make such an appointment, courts often start by asking whether the mortgage agreement authorized a receiver in the event of default, which "strongly supports" the appointment of one. *Citibank N.A.*, 839 F.2d at 97 ("It is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default."). In addition, courts also look to five other factors relevant to making an appointment, which are: "Fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of

the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property." *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 249–50 (S.D.N.Y. 2012) (internal quotation marks omitted).

Here, the Loan Documents expressly authorize CFSP to "have a receiver appointed to enter upon and take possession of the Property" if Seaman Realty defaults. *See* Dkt. No. 18 Ex. 3 ("Mortgage Agreement") § 13.1(9)(a). This alone is a strong indication that CFSP is entitled to appointment of a receiver here. Indeed, this language is unqualified—authorizing appointment "as a matter of strict right" and "without regard" to the Property's condition or the Seaman Realty's solvency—and is even more robust than other provisions that have factored heavily in decisions by other courts to appoint receivers. *See Nesbitt Bellevue*, 866 F. Supp. 2d at 250 (finding provision that stated plaintiff "may . . . apply for the appointment of a . . . receiver" "strongly support[ed]" such appointment (internal quotation marks omitted)).

Each of the remaining factors point in the same direction, or are at worst neutral. As a threshold matter, CFSP is likely to succeed on the merits of its action, as there is no real dispute that Seaman Realty has defaulted by failing to make required payments. CFSP also lacks an adequate legal remedy, as the loan is "nonrecourse" and does not permit it to pursue assets other than the Property, the leases and the rents, except in limited circumstances not present here. *See* Dkt. No. 18 ¶¶ 34–35; *see Wilmington Tr., Nat'l Assn' v. 31 Prince St., LLC*, No. 22-cv-5855 (JGK), 2023 WL 414249, at *4 (S.D.N.Y. Jan. 25, 2023) (finding this factor met because "plaintiff's only available legal remedy in this case is to foreclose on the Properties").

CFSP also argues that there is an imminent danger that the Property will be lost or diminished in value, since it has had to advance some of its own funds to pay the taxes due on it. *See* Dkt. No. 27 at 9. Although this does not present a particularly significant or imminent risk of loss, other courts have found this factor met in similar cases where plaintiffs had to advance their own funds to avoid tax liens, which would "result in a diminution in value of the Propert[y] and, in the most extreme case, seizure of [it]." *31 Prince St.*, 2023 WL 414249, at *3; *Wells Fargo Bank, N.A. v. 5615 Northern LLC*, No. 20-cv-2048 (VSB) (KHP), 2023 WL 7394340, at *11 (S.D.N.Y. May 4, 2023) (same), *report and recommendation adopted*, 2023 WL 7384632 (Nov. 8, 2023). The Court thus finds that this factor weighs in CFSP's favor as well, if only moderately.

Finally, while there are no claims that Seaman Realty has engaged in fraudulent conduct, "courts have appointed receivers even when there was no evidence of fraud." *Nesbitt Bellevue*, 866 F. Supp. 2d at 250 (internal quotation marks omitted); *see also D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc.*, 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008) ("Although plaintiff does not allege that Tama has engaged in any fraudulent conduct, this Court has appointed receivers even where there was no evidence of fraud.").

## CONCLUSION

Accordingly, CFSP's motion to appoint a receiver is granted. No later than September 12, 2025, Seaman Realty shall submit any objections to CFSP's proposed order, *see* Dkt. No. 21, and CFSP shall submit any reply by September 17, 2025, *see Nesbitt Bellevue*, 866 F. Supp. 2d at 257. SO ORDERED.

Dated:   September 9, 2025
         New York, New York

_____
Ronnie Abrams
United States District Judge